## FLEENER ET AL. *v.* LITSEY.

[No. 4,387.   Filed January 29, 1903.]

STATUTES.—*Repeal.—Counties.*—Section 7853 Burns 1901, relative to extra allowances by the board of county commissioners is not repealed by the act of 1891 (Acts 1891, p. 424) fixing the compensation and prescribing the duties of county officers.  *pp. 401–403.*

COUNTIES.—*Contracts.—Taxation.— Omitted Property.*—It is not the duty of the taxing officers of the county to hunt for property omitted from taxation, and the board of county commissioners may legally enter into a contract for the employment of persons to search for such property in order that the same may be placed upon the tax-duplicate.  *pp. 403–405.*

SAME.—*Contracts.—Taxation.— Omitted Property.— Employment of Experts.*—A contract entered into by the board of county commissioners employing experts to search for property omitted from taxation will not be held void because of the amount of the compensation agreed to be paid, where no fraud or collusion is shown.  *pp. 405, 406.*

From Parke Circuit Court; *A. F. White,* Judge.

From an order of the board of county commissioners allowing a claim of Fleener & Carnahan for searching for property omitted from taxation, Edward D. Litsey appealed to the circuit court. The circuit court sustained a demurrer to the claim and claimants appeal. *Reversed.*

*D. J. Hefron, Charles Harrington* and *Henry Daniels,* for appellants.

*S. D. Puett, J. S. McFadden, J. T. Johnston* and *J. S. White,* for appellee.

WILEY, J.—In 1897 the board of commissioners of Parke county entered into a contract with appellants under the firm name of Fleener & Carnahan, whereby they were employed to discover secreted property within said county, and also in other counties in the State and in other states, that was subject to taxation in said county and which had been omitted from the tax-duplicate, to the end that such secreted property should be placed on the tax-duplicate and duly assessed. This contract was in writing and was entered of record upon the proceedings of the board of commissioners. By the terms of the contract appellants were to "be paid a sum of money equal to one-half of all money which might be paid into the treasury on account of omitted property discovered and reported by them, and shall be entitled to receive the same as soon as such money, or any part thereof, shall have been paid into the treasury." The total amount of taxes collected upon omitted property, as discovered by appellants was $4,093.71, of which, under the contract, they would be entitled to receive $2,046.85. December 3, 1897, they were paid $400; March 10, 1898, they were paid $871.30; August 6, 1901, they filed their bill with the auditor of the county for $775.55, being the balance due. This bill was filed more than ten days before the first day of the September term, 1901, of the commissioners' court, and was allowed. From the order of allowance the appellee, as a taxpayer, appealed to the court

Fleener *v.* Litsey.

below. In his affidavit for appeal he averred that he was a taxpayer of the county, and owned therein real and personal property subject to taxation, and that as such taxpayer his property would be assessed to raise the necessary money to meet appellants' claim, etc. In the contract between the board and appellants, the former found and entered of record that "an indispensable public necessity exists, and the demands are urgent for the immediate employment of a competent person or persons to make diligent and careful examination and researches for said omitted property," etc.

We do not deem it important to set out even an abstract of the contract. It is sufficient to say that it does not differ in any material respect from the contracts in *Board, etc.,* v. *Dickinson,* 153 Ind. 682, and *City of Richmond* v. *Dickinson,* 155 Ind. 345.

With appellants' verified account they filed a copy of the contract and order of the board, as an exhibit, and made them part thereof. On appeal to the circuit court appellee demurred to the complaint or claim, for want of sufficient facts, which demurrer was sustained. Appellants declined to plead further, and judgment for costs was rendered against them.

Sustaining the demurrer to the complaint is questioned on appeal by the assignment of error. The contract between the board of commissioners and appellants was made under the provisions of §7853 Burns 1901. That section is as follows: "The board of county commissioners shall, unless in cases of indispensable public necessity, to be found and entered of record as part of its orders, make no allowance not specifically required by law to any county auditor, clerk, sheriff, assessor or treasurer, either directly or indirectly, or to any clerk, deputy, bailiff or any employe of such officer; nor shall they [it], except in cases above provided, employ any person to perform any duty required by law of any officer, or for any duty to be paid by commission or per-

centage. \* \* \* If it be found necessary, and so entered of record, to employ any person to render any service as contemplated in this action, as a public necessity, the contract for such employment shall be spread of record in said court; and, for such service rendered, the claimant shall file his account in said court ten days before the beginning of the term, and any taxpayer shall have the right to contest the claim."

It is contended by counsel for appellee that the section of the statute quoted has been repealed by §137 of the act of 1891 (Acts 1891, p. 424), and hence the board had no authority to make the contract. The title of the act of 1891 is: "An act fixing the compensation and prescribing the duties of certain State and county officers, and providing penalties for the violation of its provisions." The last section of the act,—being §137,— is as follows: "All laws and parts of laws in conflict with this act are hereby repealed to the extent of such conflict." Section 7853, *supra*, is §39 of the act of 1879. Appellants are not county officers, but performed services for the county under a contract with the board. In the performance of such services they were not acting as county officers, nor performing any duty enjoined upon a county officer by law. They acted under a contract by which they were to be paid a "commission or percentage," as provided by law. The statute (§7853, *supra*) prohibited the board from entering into any such contract, except in case "of indispensable public necessity, to be found and entered of record," etc. The board found such "indispensable public necessity" to exist. So far as the record shows, the board proceeded in harmony with the statute.

In the case of *Garrigus* v. *Board, etc.*, 157 Ind. 103, the question was presented as to whether or not §7853, *supra*, was repealed by the act of 1891, *supra*. In deciding the question the court said: "We are unable to discover any conflict between §39 of the act of 1879 and any of the pro-

visions of the act of 1891. There is, therefore, so far as we can discover, neither an express repeal of §39 by the act of 1891, nor a repeal by implication. * * * We find in the later statute no evidence of intention on the part of the legislature to repeal §39 of the act of 1879." Under this authority, appellee's contention that §7853, *supra,* being §39 of the act of 1879 (Acts 1879, p. 130), has been repealed is not well grounded.

Appellee's second proposition upon which he seeks to uphold the ruling of the trial court is this: "The board of commissioners of a county has no legal right to employ any person or persons to do or perform the duties of any county official, as provided by statute." Counsel for appellee thus state correctly an abstract proposition of law, and the authorities so hold; but their proposition is based upon an erroneous idea. They proceed upon the theory that appellants were employed to perform the duties of certain taxing officers of the county, but such is not the case. This question has been decided against their contention in the case of the *City of Richmond* v. *Dickinson,* 155 Ind. 345. In that case the common council of the city of Richmond employed an expert to discover secreted property subject to taxation by the municipality, to the end that it should be placed on the tax-duplicate, and bear its share of the burden of taxation. In deciding the question of the right of the city council to make such employment the court quoted at length §8560 Burns 1901, providing the manner in which the county auditor might assess omitted property. The statute provides that if the auditor shall discover or receive credible information, etc., that property has been omitted, he shall proceed to correct the tax-duplicate and add such property thereto, etc. In the matter of taxation the city clerk sustains the same relation to the city as the county auditor does to the county, and the court, in the case cited, applied the statute to the city clerk, where the word "auditor" is used. It was there held that the common

council had the right to procure "credible information," and charge the city with its payment.

The law does not lay upon the taxing officers the duty of hunting for secreted and omitted property. They have performed the full measure of their duty when they have placed upon the tax-duplicate all taxable property that has come to their knowledge, or concerning which they shall "receive credible information." The county auditor must, under the statute, give the notice, afford the hearing provided, and add the omitted property to the tax-duplicate whenever he "shall discover or receive credible information, or have reason to believe," that property liable for taxation has been omitted, and thus escaped its just burden for any year or any number of years. In deciding the very question here presented, the Supreme Court, in *City of Richmond* v. *Dickinson, supra,* held that the common council of a city had the power to pay for "credible information" that will add to the public revenues, and equalize the burden of the taxpayers. It is not only the policy, but the spirit of the law that all property, both real and personal, which is subject to taxation, shall bear its proportionate share of the public burden, and public policy demands that every taxpayer contribute his just proportion to the expenses of government. Property that has been secreted and omitted and escaped taxation for the current year and previous years, should, when discovered, be placed on the tax-duplicate. As we have seen it is not the duty of the proper taxing officers to hunt for omitted property, and, if the law authorizes any method of discovering such property so it may be taxed, the efforts of public officers in securing that result should be encouraged and upheld. Though a percentage of the amount thus collected and covered into the public treasury is paid for ferreting out and discovering the property, still the public is benefited, and the burden of taxation is equalized to the amount remaining in the treasury after such payment. Otherwise, such property would wholly escape taxation, and

nothing would be taken from the burden of the honest prop-
erty owner who returns all of his property to be taxed.  In
the Dickinson case the court said the general powers of the
county were not there directly involved and therefore were
not considered.  Under the rule of law there declared, how-
ever, and upon reason and principle, we have no doubt of
the power of the county to make the contract upon which
appellants base their right to recover.

In support of the ruling of the trial court it is finally
urged that the contract between appellants and the county is
against public policy, and void.  Counsel insist that the con-
tract is void because the commissioners did not have the
right to contract without consent or authority as to the
funds of the State, or of the various townships and incorpo-
rated towns in the county.  Under the authorities we have
cited the contract is not illegal or void.  The board of com-
missioners having power to enter into contracts of this char-
acter, such contracts will not be declared illegal or void be-
cause of the amount of compensation agreed to be paid.  The
contracting parties had a right to fix the compensation, and,
in the absence of fraud or collusion, the courts will not
interfere.  The record does not show fraud or collusion.

But the real question under this branch of the case which
we are asked to consider and determine is this:  In the con-
tract in question, which provides that the county should pay
to appellants an amount equal to fifty per cent. of the
amount of taxes collected, is it incumbent upon the county
to pay the entire amount, or should the State pay its pro-
portionate share?  No such question is presented here by
the record.  We are only dealing with a question of plead-
ing.  The county contracted to pay appellants a specific
per cent. of the amount of taxes collected on property dis-
covered by them and placed on the tax-duplicate.  Under
that contract the county is primarily liable to appellants,
and recognized its liability by allowing appellants' claim

through its board of commissioners. Neither the county nor State are parties to this appeal, and the record does not present any question between them as to their reciprocal obligations in the premises. We only hold that no such question is presented.

Appellants' complaint states a cause of action, and it was error to sustain a demurrer to it. Judgment is reversed, and the court below is directed to overrule the demurrer.